NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| THOMAS O'BRIEN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-cv-6578 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | |
| AUBREY GLADSTONE, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

PISANO, District Judge

Presently before the Court is a motion to transfer this matter to the United States

Bankruptcy Court for the Eastern District of New York[1] pursuant to 28 U.S.C. § 1412 brought by

defendants Aubrey Gladstone, Marianne Gladstone and Gladstone Consulting, Inc. (collectively

"Defendants").

Plaintiff, Aubrey Gladstone, filed his original Complaint in New Jersey Superior Court,

Ocean County, on October 10, 2013. Defendants removed the action to this Court on October 31,

2013, pursuant to this Court's jurisdiction under 28 U.S.C. 1332.[2] Docket # 1.  Plaintiff's

Complaint asserts claims against Defendants for fraud, unjust enrichment, breach of fiduciary

duty, negligence, civil conspiracy, and aiding and abetting.

---

[1] Two separate motions for transfer were filed with the Court. The first was filed by Defendant Aubrey Gladstone [Docket # 7] and the second was filed by Defendants Marianne Gladstone and Gladstone Consulting, Inc. [Docket # 8]. The second motion filed by Marianne Gladstone and Gladstone Consulting, Inc. relies solely on the brief and supporting documents submitted by Aubrey Gladstone. For the purpose of clarity, the Court refers to both motions collectively as "the Motion."

[2] According to the Notice of Removal, Plaintiff Thomas O'Brien is a citizen of New Jersey, Defendants Aubrey and Marianne Gladstone are citizens of Florida, and Gladstone Consulting, Inc. is a Florida corporation with its principal place of business in Boca Raton, Florida.

For the reasons set forth below, Defendants' motion to transfer this matter to the United States Bankruptcy Court for the Eastern District of New York [Docket # 7, 8] is DENIED.

I.      BACKGROUND[3]

Gladstone Consulting, Inc. ("Gladstone") is a corporation of the State of Florida and Aubrey Gladstone and Marianne Gladstone are its president and vice-president, respectively. Plaintiff and Defendants loaned money to Prime Plus Acquisition Corp., a Florida Corporation ("Prime Plus").[4] Plaintiff holds a promissory note in the amount of $350,000 made by Prime Plus, which is secured by all of the assets of Prime Plus pursuant to a Loan and Security Agreement. According to Plaintiff, in March 2011, Defendants loaned Prime Plus $500,000 in exchange for a promissory note made by Prime Plus, which is secured by Prime Plus' assets, including a promissory note from Oak Rock Financial, Inc. ("Oak Rock" or the "Debtor") in the amount of $8,320,000.

According to Plaintiff, Oak Rock is a "specialty asset based" lender,  and in April 2013, it was discovered that Oak Rock's Manager had perpetrated a fraud by misrepresenting the value of Oak Rock's assets to its lenders[5] and was in financial distress. Plaintiff claims that following revelations of Oak Rock's financial distress, Plaintiff was concerned that his loan to Prime Plus was in jeopardy because Prime Plus' only assets are an equity interest in Oak Rock and a note payable from Oak Rock to Prime Plus. Therefore, it was Plaintiff's understanding that if Oak Rock became insolvent, Prime Plus would also become insolvent and unable to pay the promissory note from Prime Plus to Plaintiff.

---

[3] The following facts, unless otherwise noted, are taken from Plaintiff's Complaint.
[4] According to Defendants, Plaintiff's wife, Theresa O'Brien, is the President of Prime Plus.
[5] Israeli Discount Bank ("IDB") is the lead bank and agent of a syndicate of banks (the "Lending Banks") that are also creditors of Oak Rock. As of Oak Rock's filing for bankruptcy in April 2013, the Lending Banks claimed they were owed $89,910,826 under their credit agreement with Oak Rock, secured by a first lien position in substantially all of Oak Rock's assets.

According to Plaintiff, Defendants represented themselves as "experts in financial crisis management, financial restructurings and workouts of bankruptcy" and claimed to have "the requisite expertise to navigate their way through any financial crisis so that all of the noteholders of Prime Plus would be protected." Plaintiff claims that although Gladstone has no attorneys on staff, he was directed to a website maintained by Defendants claiming that Gladstone maintained a staff of lawyers and accountants "on call around the country" and "can quickly address almost any type of problem."[6] Plaintiff alleges that he was advised by Defendants that they would "protect the interests" of Plaintiff and the other noteholders and ensure that all of the noteholders of Prime Plus would be "treated identically" with respect to the repayment of their loans to Prime Plus.

According to Plaintiff, he was advised by Defendants that through their efforts, Oak Rock "should and could . . . contain the financial crisis, avoid bankruptcy and achieve an out-of-court resolution that would minimize losses and expenses of Oak Rock, which would in turn protect Prime Plus and the noteholders of Prime Plus." Plaintiff further alleges that Defendants represented to Plaintiff that an involuntary bankruptcy would not occur because Oak Rock's lenders would be viewed as a single creditor and an involuntary bankruptcy could only be filed by three or more creditors. Plaintiff claims he was assured by Defendants that if a bankruptcy did occur, "Defendants had good connections with lawyers in Delaware and the bankruptcy filing would occur in Delaware under the close supervision of Defendants."

Plaintiff asserts that in an alleged effort to resolve Oak Rock's financial issues, Defendants undertook negotiations with the Lending Banks and advised Oak Rock, Prime Plus and Plaintiff on the correct course of action to achieve an out-of-court resolution and minimize

---

[6] According to Plaintiff, the Gladstone website's statement that Marianne Gladstone previously worked at a law firm coupled with the statement that Gladstone has attorneys on staff, "falsely suggests" that Marianne Gladstone is an attorney, when she is not, and amounts to false advertising.

expenses and losses to Oak Rock, Prime Plus and Plaintiff. While the scope of the arrangement is

unclear, Defendants entered into an agreement (the "Agreement") with Oak Rock, under which

Defendants agreed to "provide professional reorganization and/or wind-down consulting services

for Oak Rock" in furtherance of the legal representation provided by Oak Rock's attorneys.

Brief, Ex. A at 1. The Agreement is dated April 26, 2013, and includes an indemnification

clause, which states that:

> As [Gladstone Consulting] will be acting on behalf of [Oak Rock]
> during the course of this engagement, [Oak Rock] agrees to
> indemnify and hold harmless [Gladstone Consulting] and its
> directors, officers, employees, subcontractors, agents and affiliates,
> from and against all costs, losses, expenses, suits, claims or
> damage of any kind or nature whatsoever arising out of or in any
> way related to [Gladstone Consulting's] engagement hereunder. *Id.*
> at 2.

In spite of Defendants' assurances, on April 29, 2013, the Lending Banks filed an

involuntary petition under Chapter 7 of the United States Bankruptcy Code against Oak Rock in

the United States Bankruptcy Court for the Eastern District of New York, which was

subsequently converted to a proceeding under Chapter 11 of the Bankruptcy Code. After the

filing date, Oak Rock defaulted on its promissory note to Prime Plus and Prime Plus in turn

defaulted on the promissory notes held by its noteholders.

According to Plaintiff, prior to the commencing of Oak Rock's bankruptcy, Defendants

assured that they would inquire into the status of UCC filings by Plaintiff and the other

noteholders of Prime Plus and ensure that all necessary filings had been made to properly

document and perfect their security interest in Prime Plus' assets. However, Plaintiff alleges that

on May 20, 2013, Defendants, for their sole benefit and without notice to Plaintiff or the other

noteholders, filed and recorded a UCC-1 standard form Financing Statement with respect to

certain assets of Prime Plus which perfected only Defendants' security interests and the security

interests of Plaintiff and the other noteholders were never perfected. Plaintiff claims that Aubrey Gladstone filed his UCC-1 based upon financial information that he obtained while working for Oak Rock and "for the purpose of attempting to enhance his ability to collect payment of the promissory note to the exclusion and detriment of [the noteholders] and Plaintiff."

Immediately after Defendants' filing of the UCC-1, Defendants commenced an action against Prime Plus in the Circuit Court for the Fifteenth Judicial Circuit in Palm Beach County, Florida. The Florida action sought a judgment foreclosing upon Prime Plus' assets and has since been amended to seek a judgment in favor of Defendants on their promissory note.

Plaintiff alleges that through their conduct surrounding Oak Rock's financial distress, "Defendants have flagrantly and outrageously abused the trust and confidence in which they were held by Plaintiff" and "misrepresented and failed to disclose to Plaintiff their intention to advance and protect their interest to be repaid by Prime Plus" to Plaintiff's detriment. Based on the foregoing, Plaintiff alleges claims for Fraud, Unjust Enrichment, Breach of Fiduciary Duty, Negligence, Civil Conspiracy and Aiding and Abetting.

In the present motion, Defendants seek to transfer this matter to the United States Bankruptcy Court for the Eastern District of New York based on the assertion that this matter is "related to" Oak Rock's pending bankruptcy, or in the alternative, that this matter is a "core" bankruptcy proceeding. Docket # 7,8. Plaintiff opposes Defendants' motion. Docket # 9.

## II.    DISCUSSION

The transfer of an action under the Bankruptcy Code to a court in another district is governed by 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." While § 1412 speaks only of proceedings under the Bankruptcy

Code, the Third Circuit has held that § 1412 is the appropriate method for transfer of cases that are "related to" a bankruptcy proceeding. *Maritime Elec. Co., Inc. v. United Jersey Bank,* No. 90–6057, 1992 U.S.App. LEXIS 5144, at *11–12 (3d Cir. Mar. 24, 1992).

### A. "Related To" Bankruptcy Jurisdiction

An action is related to a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984). In determining whether a civil proceeding is related to a bankruptcy, courts look to "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* While the requirement of a "conceivable" effect is seemingly broad, is not "limitless." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995), and "[t]here must be some nexus between the 'related' civil proceeding and the title 11 case." *Pacor,* 743 F.2d at 994.

An action is not "related to" a bankruptcy if it is based on an indemnification clause between a defendant in a civil action and a debtor in a bankruptcy proceeding and "the indemnification claim against the debtor ha[s] not yet accrued and would require another lawsuit before [having] an impact on [the debtor's] bankruptcy proceeding." *In re WR Grace & Co.,* 591 F.3d 164, 172 (3d Cir. 2009). In order to establish that an action is related to a bankruptcy, a defendant must show that: (1) the liability of the bankrupt party is "automatically triggered when the purported related action against the party seeking indemnification is begun"; and (2) "a later lawsuit against the debtor . . . [is not] a prerequisite to a finding of indemnification." *Steel Workers Pension Tr. v. Citigroup, Inc.,* 295 B.R. 747, 753 (E.D.Pa. 2003). Thus, a right to indemnification from a bankruptcy debtor does not necessarily create "related to" bankruptcy

jurisdiction. *See WR Grace & Co.,* 591 F.3d at 171 (stating that "an inchoate claim of common law indemnity, is not, in and of itself, enough to establish the bankruptcy court's subject matter jurisdiction").

In contradiction to Third Circuit precedent, Defendants argue that that "by virtue of [Oak Rock's] agreement to provide indemnification to the named Defendants . . . this case is 'related to' the Oak Rock Bankruptcy." Brief at 2. According to Defendants, because Oak Rock is "required to indemnify and hold Defendants harmless . . . any judgment against the Defendants in this case would thereby have an effect on the property of the Oak Rock Bankruptcy Estate." *Id.* at 3. However, applying the foregoing standard, the Court finds that Defendants have failed to establish that the indemnification clause in their agreement with Oak Rock is sufficient to create "related to" bankruptcy jurisdiction in this case.

Defendants assert that the ultimate responsibility for their alleged misconduct rests with Oak Rock by virtue of the indemnification clause included in the Agreement. However, Plaintiff's allegations are founded solely on Defendants' alleged actions or inactions, and any reference to Oak Rock is made by Defendants and is at most incidental to Plaintiff's claims. Plaintiff's claims are against Defendants, not Oak Rock, and Oak Rock's possible indemnification of Defendants for any liability arising from Plaintiff's claims will not be decided by this action and would require a second action to determine the scope of the indemnification clause. Therefore, because Defendants are not entitled to automatic indemnification by Oak Rock, a second proceeding between Defendants and Oak Rock would be required to determine Defendants' coverage under the indemnification agreement. Accordingly, the Court finds this action is not "related to" the ongoing bankruptcy proceeding.

### B. "Core" Proceedings

In the alternative, Defendants argue that Plaintiff's claims constitute "core" bankruptcy proceedings by virtue of Defendants' possible claim against Oak Rock for indemnification. Bankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case. *In re Combustion Eng'g., Inc.,* 391 F.3d 190, 225 (3d Cir. 2005). The first three categories are "core" proceedings in which the bankruptcy court has the power to hear, decide, and enter orders and judgments. *Id.* (citing 28 U.S.C. § 157(b)(1)). In order to determine whether a claim is "core," a court must first look the illustrative list of "core" proceedings found in § 157(b)(2). *In re Exide Technologies,* 544 F.3d 196, 206 (3d Cir. 2008). Then, a court must conduct a two-step analysis, under which "a claim will be deemed core if: (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.* (citations omitted).

Here, none of Plaintiff's claims fall within the list found in § 157(b)(2), invoke a substantive right provided by title 11, or by their nature, could arise only in the context of a bankruptcy case.[7] Plaintiff's claims are state law causes of action based in contract and tort. Defendants argue that this action is a "core" bankruptcy proceeding because "Plaintiff alleges the improper or negligent conduct of the Defendants, as aided and abetted by . . . other professionals retained by the Debtor in the course of the Oak Rock bankruptcy proceeding." However, Plaintiff's Complaint is brought against Defendants based on their alleged misconduct and does not assert any claims against Oak Rock.

---

[7] Defendant asserts that this matter is a "core" proceeding and should therefore be transferred to the Bankruptcy Court because the decision of whether to allow Defendants' untimely possible indemnification claim against Oak Rock relates to the allowance or disallowance of claims against the estate, which is one of the "core" proceedings listed in § 157(b)(2). However, Defendants have not attempted to file any claims against Oak Rock and the mere possibility that they will do so in the future is insufficient to convert this matter to a "core" bankruptcy proceeding.

While Defendants claim that the conduct Plaintiff complains of occurred during Defendants' representation of Oak Rock, and is therefore part of Oak Rock's bankruptcy proceeding, Defendants' alleged misconduct occurred in furtherance of their own interests and there is nothing to suggest that their actions were for the benefit of Oak Rock pursuant to the Agreement. Therefore, because Defendants have failed to establish that any of Plaintiff's claims constitute "core" bankruptcy proceedings, the Court declines to transfer this matter to the Bankruptcy Court. Accordingly, Defendants' Motion is denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this matter to the United States Bankruptcy Court for the Eastern District of New York [Docket # 7, 8] is DENIED. An appropriate Order accompanies this Opinion.

Date:  July 1, 2014                                           /s/ Joel A. Pisano
                                                              JOEL A. PISANO
                                                              United States District Judge

9